UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

CHRISTOPHER WEST,                )
                                 )
         Plaintiff,              )
                                 )
    vs.                          )      Case No. 4:17-cv-02286-AGF
                                 )
NANCY A. BERRYHILL, Acting       )
Commissioner of Social Security,[1] )
                                 )
         Defendant.              )

# MEMORANDUM AND ORDER

This action is before the Court for judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff Christopher West is not disabled and thus not entitled to disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. For the reasons set forth below, Commissioner's decision is affirmed.

## BACKGROUND

The Court adopts the facts set forth in Plaintiff's Statement of Uncontroverted Facts (ECF No. 21) and Defendant's Statement of Additional Facts (ECF No. 26-2), which Plaintiff has not opposed. Together, these statements provide a fair description of the

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, she is substituted for Acting Commissioner Carolyn W. Colvin as the Defendant in this suit.

record before the Court. Specific facts will be discussed as needed to address the parties' arguments.

Plaintiff, a veteran born November 9, 1978, was diagnosed with post-traumatic stress disorder (PTSD) after serving in Iraq in 2008 and 2009. He was most recently employed by the Parks Department of University City until August 31, 2012, when he was terminated due to aggressive behavior. In September 2013, Plaintiff underwent a compensation and pension (C&P) examination conducted by a psychologist, Dr. Martina Ritchhart, through the Veterans' Administration (VA). After reviewing Plaintiff's medical records and interviewing Plaintiff, Dr. Ritchhart gave Plaintiff a global assessment of functioning (GAF)[2] of 52 and concluded that, although Plaintiff's PTSD symptoms impaired his ability to cope with life stressors, those symptoms did not render him incapable of working. Dr. Ritchhart suggested that, given Plaintiff's "difficulty in forming and maintaining alliances with co-workers," he may be suited for independent, autonomous work with adequate leadership. In January 2016, Plaintiff received a VA rating entitling him to VA benefits on the basis of unemployability due to service-connected disability as of October 13, 2015. In January 2017, a VA psychologist,

---

[2] A GAF score represents a clinician's judgment of an individual's overall ability to function in social or occupational settings, not including impairments due to physical or environmental limitations. Diagnostic & Statistical Manual of Mental Disorders (4th ed.) (DSM-IV) at 32. GAF scores of 31 to 40 indicate some impairment in reality testing or communication or "major" impairment in social or occupational functioning; scores of 41 to 50 reflect "serious" impairment in these functional areas; scores of 51 to 60 indicate "moderate" impairment; scores of 61 to70 indicate "mild" impairment. However, in recent years, the agency has recognized, and the Eighth Circuit has noted, that GAF scores have limited importance. *Nowling v. Colvin*, 813 F.3d 1110,1115 n.3 (8th Cir. 2016).

Dr. Joseph Daus, issued a treating source statement indicating that Plaintiff had been enrolled in a VA mental health intensive case management program since February 2016 and was meeting "near-weekly" with a social worker.

Citing the date of termination of his last employment (August 31, 2012) as the date of onset of his disability, Plaintiff applied for disability benefits on March 28, 2016. His application was denied at the initial administrative level, and he thereafter requested a hearing before an Administrative Law Judge (ALJ). On February 15, 2017, the ALJ heard the testimony of Plaintiff, who was represented by counsel, and of vocational expert (VE) Jennifer Smidt.

**Evidentiary Hearing and ALJ's Decision**

At the administrative hearing, Plaintiff testified that he attended community college briefly but dropped out. He shops and cooks for himself, takes care of his daughter on weekends, is able to concentrate and focus his attention "if it's something [he's] truly interested in," and gets anxious in public and is easily angered. He further testified that he was fired from his last job because his co-workers were afraid of him, and he had been charged with assault after holding a gun to his sister's head and threatening to kill her.

By decision dated April 6, 2017, the ALJ determined that Plaintiff had the severe impairments of PTSD, mood disorder (referenced as major depressive disorder and adjustment disorder in the medical records), alcohol abuse, a history of a gunshot wound to

the abdomen, small bi-malleolar spurs of the ankle, and mild concussion symptoms.[3] The ALJ found that the severity of Plaintiff's mental impairments, considered singly and in combination, did not meet or medically equal the criteria of listings 12.02 (neurocognitive disorders), 12.04 (depressive, bipolar, and related disorders), and 12.15 (trauma- and stressor-related disorders). These conditions are not deemed disabling unless functional limitations known as "Paragraph B criteria" are present, meaning a claimant has one extreme or two marked functional limitations in his ability to: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. 20 C.F.R. § 404.1520a(c)(3).[4] Here, the ALJ found that Plaintiff had only: (1) mild limitations in understanding, remembering, or applying information; (2) moderate limitations in interacting with others; (3) mild limitations in concentrating, persisting, and maintaining pace; and (4) moderate limitations in adapting and managing himself. Thus the ALJ concluded that Paragraph B criteria were not satisfied.

When Paragraph B criteria are not satisfied, the relevant listings also have additional functional criteria known as "Paragraph C criteria," used to evaluate "serious and persistent" mental disorders. Paragraph C criteria require a medically documented

---

[3] As Plaintiff's arguments relate only to his mental impairments, the Court does not discuss Plaintiff's physical impairments.

[4] These criteria became effective January 17, 2017, and apply to claims that were pending at that time. See Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66,137, 66,138. (Sept. 26, 2016) (stating that new rule applies to pending claims).

history of the existence of the disorder for at least two years, with evidence of (1) medical treatment, mental health therapy, psychosocial support, or a highly structured setting that is ongoing and that diminishes the symptoms and signs of the claimant's disorder and (2) marginal adjustment, meaning a minimal capacity to adapt to changes in one's environment or to demands that are not already part of one's daily life. Here, the ALJ concluded that Paragraph C criteria were not satisfied.

The ALJ further determined that Plaintiff had the residual functional capacity (RFC) to perform medium work as defined in 20 C.F.R 404.1567(c) in that he (1) can lift, carry, push, or pull 50 pounds occasionally and 25 pounds frequently and (2) can sit, stand, or walk for six hours in an eight-hour work day; but Plaintiff (3) is limited to simple, routine tasks with minimal changes in job setting and duties and (4) can do no handling of customer complaints, no fast-paced production work, no contact with the public, and only occasional contact with co-workers and supervisors. In support of this determination, the ALJ noted the following from Plaintiff's medical and psychological records.[5]

In May and June 2011, Plaintiff experienced stress due to a divorce but was working and keeping busy, spending time with friends, and denied suicidal ideations. Tr. 1202-1210. In December 2011, Dr. Kurtis, a VA psychiatrist, noted that Plaintiff was stable psychiatrically and not taking any medications. Tr. 1165. In July 2012, Plaintiff spoke with LCSW Jane Tomory and denied any mental health problems. Tr. 1156. In September 2013, Plaintiff spoke with LMSW Laura Riegler and reported that he did not

---

[5] All records are from the John Cochran VA Medical Center unless otherwise noted.

want to take any psychiatric medications but was drinking as a coping method. He denied thoughts of suicide and declined an appointment at the VA PTSD clinic. Tr. 1154.

At his C&P exam with Dr. Ritchhart in September 2013, he reported that he spent his time working on cars, doing chores, fishing, taking care of his daughter, and going to bars with friends. Tr. 1147. In July 2014, Plaintiff spoke again with Ms. Riegler and reported that he was "doing okay," working in the yard, and enrolled in college classes. Tr.1127. In June 2015, after the altercation with his sister, police accompanied him to the SSM Health DePaul emergency room (Dr. William Suk), where he stated that his sister and girlfriend had confronted him about his drinking. He denied suicidal or homicidal ideations or plans. Tr. 1256.

VA records (Dr. Atthar Naeem) indicate that Plaintiff overdosed on Vicodin on October 15, 2015, after his girlfriend broke up with him (Tr. 951), but he reestablished outpatient therapy with Ms. Rieger shortly thereafter and discussed coping strategies; Plaintiff denied suicidal plans. Tr. 942-943. On October 21, 2015, he spoke with LMSW Meghan Voorhees and reported that he had been hunting with a friend. Tr. 928. On October 29, 2015, he reported to Ms. Voorhees that he spent the weekend with his daughter, watched her cheer at a school game, and carved a pumpkin with her. Tr. 920. On November 5, 2015, Plaintiff was examined by a psychiatrist, Dr. Thena Poteat, after his ex-girlfriend called 911 due to a perceived suicide risk. Dr. Poteat noted that Plaintiff was anxious, irritable, and angry but that Plaintiff explicitly denied aggressive or suicidal thoughts. Tr. 887. On November 16, 2015, he was "doing great" on sertraline.

6

Tr. 764. On December 6, 2015, Plaintiff went to the emergency room after overdosing on morphine (prescribed for a splenic infarction), citing the break-up with his girlfriend. Tr. 664, 671. He was transferred to the behavioral health unit and discharged on December 7, 2015. Tr. 644.

On January 12, 2016, Plaintiff reported that things were "pretty good" and he was moving on, renovating his house, and selling items on Craigslist. Tr. 592. On March 4, 2016, a VA nurse, Kermit Johnson, visited Plaintiff and found him "to be in great spirits." Tr. 545. On August 8, 2016, Dr. Curtis noted that Plaintiff was keeping busy with home projects and going camping. Tr. 1375. On October 31, 2016, Mr. Johnson reported that Plaintiff was happy with his progress; he had built a greenhouse and was looking forward to a fish fry and a trip to Florida. Tr. 1332. His mood and affect were normal, and he stated that his PTSD symptoms were not a distraction from his daily life. Tr. 1335-1336. On December 12, 2016, Mr. Johnson reported that Plaintiff was cooking chili, smiling and laughing, and talking with his brother about upcoming events. Tr. 1308.

Based on the totality of Plaintiff's treatment records, while the ALJ acknowledged that Plaintiff had brief instances of deterioration due to divorce and a subsequent break-up, she also noted that "these episodes were many years apart" and, thus, ultimately found that "overall, the claimant's daily activities are inconsistent with someone who is disabled." The ALJ gave great weight to Dr. Ritchart's opinion, from September 2013, that Plaintiff's PTSD does not preclude him from sustaining physical or sedentary employment but that Plaintiff's "difficulty in maintaining social alliances" indicated an autonomous work

7

environment. Tr. 1146. The ALJ also gave great weight to the similar determination of the non-examining State agency psychological consultant, Dr. Stephen Scher, who reviewed Plaintiff's records in May 2016 and concluded that Plaintiff was able to perform simple and moderately complex tasks not requiring significant contact with peers, supervisors, or the public. Tr. 64. The ALJ found these opinions consistent with Plaintiff's treatment records and activities of daily living. For the same reasons, the ALJ gave great weight to Plaintiff's GAF scores ranging in the 50s during the relevant period.[6] Additionally, the ALJ gave great weight to the opinion of a non-examining State agency physician's finding that Plaintiff could perform a full range of medium work.[7] The ALJ found this consistent with Plaintiff's lack of physical conditions and his active lifestyle.

Conversely, the ALJ gave little weight to Plaintiff's VA disability rating (Tr. 240) because it did not explain the basis for Plaintiff's PTSD and because records from the VA medical center did not show signs over a 12-month period reflecting a marked or extreme limitation in mental functioning. The ALJ reasoned that, although Plaintiff may have been experiencing deterioration at the time of the rating, he had been stable prior to that point and showed improvement afterward.

Finally, the ALJ found that Plaintiff could perform certain jobs listed in the Dictionary of Occupational Titles (DOT) such as lab equipment cleaner, auto-body repair

---

[6] Plaintiff had a GAF of 58 in October 2016. Tr. 1303, 1307, 1311, 1314, 1321, 1331.

[7] Neither the ALJ's decision nor the parties' briefs or statements of fact provide this physician's name, the date of submission, or a citation to the record regarding this opinion. The Court assumes that this is a reference to the RFC assessment by Dr. Michael O'Day on June 1, 2016. Tr. 63.

helper, and order filler, which the VE testified a hypothetical person with Plaintiff's RFC and vocational factors (age, education, work experience) could perform and that were available in significant numbers in the national economy. Accordingly, the ALJ found that Plaintiff was not disabled as defined under the Social Security Act.

Plaintiff filed a timely request for review by the Appeals Council, which denied his request June 7, 2016. Thus, Plaintiff has exhausted all administrative remedies, and the ALJ's decision stands as the final agency action now under review. In his sole point, Plaintiff argues that the ALJ's determination of his RFC is not supported by substantial evidence because the ALJ relied on the opinions of Dr. Ritchhart and the non-examining doctors and did not accord sufficient weight to the VA disability rating.

## DISCUSSION

**Statutory Framework**

To be entitled to benefits, a claimant must demonstrate an inability to engage in substantial gainful activity which exists in the national economy, by reason of a medically determinable impairment which has lasted or can be expected to last for not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The Commissioner has promulgated regulations, found at 20 C.F.R. § 404.1520, establishing a five-step sequential evaluation process to determine disability. The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity. If not, the Commissioner decides whether the claimant has a severe impairment or combination of impairments. A severe impairment is one that significantly limits a person's physical or mental ability to do basic work

activities. 20 C.F.R. § 404.1520(c). A special technique is used to determine the severity of mental disorders. As detailed more fully above, this technique calls for rating the claimant's degree of limitations in four areas of functioning, specifically the ability to: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. 20 C.F.R. § 404.1520a(c)(3).

If the impairment or combination of impairments is severe and meets the duration requirement, the Commissioner determines at step three whether the claimant's impairment meets or is medically equal to one of the deemed-disabling impairments listed in the Commissioner's regulations. If not, the Commissioner asks at step four whether the claimant has the RFC to perform his past relevant work. If the claimant cannot perform his past relevant work, the burden of proof shifts at step five to the Commissioner to demonstrate that the claimant retains the RFC to perform work that is available in the national economy and that is consistent with the claimant's vocational factors – age, education, and work experience. *See, e.g., Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010). When a claimant cannot perform the full range of work in a particular category of work (medium, light, and sedentary) listed in the regulations, the ALJ must produce testimony by a vocational expert (or other similar evidence) to meet the step-five burden. *See Baker v. Barnhart*, 457 F.3d 882, 894 (8th Cir. 2006).

**Standard of Review**

In reviewing the denial of Social Security disability benefits, a court must review the entire administrative record to determine whether the ALJ's findings are supported by

substantial evidence on the record as a whole. *Johnson v. Astrue*, 628 F.3d 991, 992 (8th Cir. 2011). The court "may not reverse merely because substantial evidence would support a contrary outcome." *Id*. "Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion." *Id*. A reviewing court must consider evidence that both supports and detracts from the ALJ's decision. *Chaney v. Colvin*, 812 F.3d 672, 676 (8th Cir. 2016). If it is possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, the court must affirm the decision of the Commissioner. *Id*. In other words, a court should "disturb the ALJ's decision only if it falls outside the available zone of choice." *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015). A decision does not fall outside that zone simply because the reviewing court might have reached a different conclusion had it been the finder of fact in the first instance. *Id.* The Court defers heavily to the findings and conclusions of the Social Security Administration. *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010).

**Arguments of the Parties**

Plaintiff asserts that the ALJ's RFC finding is not supported by substantial evidence in that the ALJ relied heavily on Dr. Ritchhart's opinion and accorded little weight to the VA disability rating. More specifically, Plaintiff argues that: (1) some of Dr. Ritchhart's findings do not support the ALJ's RFC determination; (2) Dr. Ritchhart's opinion from 2013 fails to account for Plaintiff's subsequent difficulties; (3) the non-examining doctor's report also pre-dates Plaintiff's suicide attempts; (4) the ALJ "fail[ed] to offer a legally

sufficient rationale relative to consistency/credibility; and (5) because the ALJ's RFC was unsupported, the hypothetical posed to the VE was flawed, so her testimony has no value. Plaintiff does not challenge the ALJ's step-two findings pursuant to 20 C.F.R. §404.1520a. Defendant counters that: (1) the evidence supports the ALJ's RFC determination; (2) the ALJ was entitled to accord weight to the non-examining doctor's opinion, which was consistent with other evidence; and (3) Plaintiff's subjective complaints were inconsistent with the record as a whole.

**Analysis**

In essence, Plaintiff simply challenges the ALJ's allocation of weight to the evidence in the record in arriving at Plaintiff's RFC. "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). Under the applicable social security regulations,[8] the opinion of a treating physician is "normally entitled to great weight." *Thomas v. Berryhill*, 881 F.3d 672, 675 (8th Cir. 2018) (citation omitted). However, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley*, 829 F.3d at 932. The

---

[8] For claims filed on or after March 27, 2017, the regulations have been amended to eliminate the treating physician rule. The new regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources," but rather, the Administration will consider all medical opinions according to several enumerated factors, the "most important" being supportability and consistency. 20 C.F.R. § 404.1520c. Plaintiff's claim pre-dates the amended rule, but the distinction is immaterial here, as Dr. Ritchhart's opinion is consistent with other evidence in the record.

ALJ reviews the record as a whole. *Id.* Importantly, a claimant's VA disability rating is not binding; the ALJ may give it limited weight if she finds it inconsistent with the record as a whole. *Smith v. Colvin*, 756 F.3d 621, 625 (8th Cir. 2014). That is precisely the case here.

Drs. Ritchhart, Scher, and O'Day unanimously opined that Plaintiff was capable of work despite his limitations. The ALJ chronicled Plaintiff's treatment history in detail as summarized above. She acknowledged episodes of mental deterioration prompted by life events but also noted multiple examples of Plaintiff's overall mental abilities (e.g. enrolling in school, caring for his daughter and pets, socializing with friends) and physical capabilities (e.g., hunting, fishing, renovations, auto repair) throughout the relevant period. The Court agrees with the ALJ's conclusion that neither Plaintiff's treatment records nor his activities of daily living indicate an inability to work. The ALJ properly relied on the doctors' opinions, and her resulting decision was well within the available zone of choice. The ALJ was free to discount Plaintiff's VA rating, which contained no supporting explanation and was inconsistent with the record as a whole. Additionally, an ALJ "may decline to credit a claimant's subjective complaints if the evidence as a whole is inconsistent with the claimant's testimony." *Julin v. Colvin*, 826 F.3d 1082, 1086 (8th Cir. 2016).

Though Plaintiff emphasizes those portions of the record reflecting discrete coping crises, this Court may not reverse simply because some evidence would have supported a different outcome. *Johnson*, 628 F.3d at 992. It the ALJ's task to resolve conflicts in the

evidence. *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006). If it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the Court must affirm the decision. *Chaney*, 812 F.3d at 676. Mindful of this Court's standard of review, the Court finds the ALJ's assignment of weight reasonable on this particular record.

Finally, because the Court finds the ALJ's RFC supported by the evidence, Plaintiff's dependent challenge to the value of the VE's testimony based on that RFC necessarily fails as well.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**. A separate Judgment shall accompany this Memorandum and Order.

*Audrey G. Fleissig*
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated on this 22nd day of March, 2019.